# United States District Court
# Eastern District of Michigan
# Southern Division

| | |
|---|---|
| The United States of America, | Criminal No. 15-20487 |
| Plaintiff, | Honorable Sean F. Cox |
| v. | |
| Jabron Thomas, | |
| Defendant. | |

## Government's Response to Defendant's Motions in Limine (Doc. 35) and Brief in Support

For the reasons stated in the government's brief, this Court should (1) deny Defendant's motion to preclude eyewitnesses to the bank robbery from identifying the bank robber in court and (2) deny Defendant's motion to preclude the government from introducing photographs of Defendant. Because the government does not intend on introducing testimony relating to Defendant's parole status, Defendant's motion in limine to exclude such testimony is moot.

Respectfully submitted,

BARBARA MCQUADE
United States Attorney

                                                      s/Andrew J. Yahkind  
                                                      ANDREW J. YAHKIND  
                                                      JEROME F. GORGON  
                                                      Assistant United States Attorneys  
                                                      211 W. Fort Street, Suite 2001  
                                                      Detroit, MI  48226  
                                                      Phone:  (313) 226-9100  
                                                      andrew.yahkind@usdoj.gov  
                                                      jerome.gorgon@usdoj.gov

Dated:  December 7, 2015

# United States District Court
# Eastern District of Michigan
# Southern Division

| | |
|---|---|
| The United States of America, | Criminal No. 15-20487 |
| Plaintiff, | Honorable Sean F. Cox |
| v. | |
| Jabron Thomas, | |
| Defendant. | |
| _____/ | |

**Government's Brief in Response to Defendant's Motions in Limine (Doc. 35)**

Defendant seeks to (1) prevent the government from questioning eyewitnesses to the bank robbery as to whether they can identify the bank robber in court and (2) prevent the government from introducing photographs of Defendant so as to allow the jury to compare those photographs to surveillance images of the bank robber. Because such testimony and evidence is both proper and highly probative of the central issue in this case (the identity of the bank robber), the Court should deny Defendant's motions.

### I. There Is No Basis Under Which to Screen or Exclude Eyewitness Testimony That May Identify Defendant as the Bank Robber

Defendant complains that because law enforcement did not conduct a lineup or photo array in this case, eyewitnesses to the bank robbery should be precluded

3

from being questioned about whether they can identify the bank robber in court. His objection is without merit.

As an initial matter, a defendant has no constitutional right to either a line-up or photo array. *See, e.g.*, *Range v. Berghuis,* No. 09-10945, 2015 WL 1967030, at *8 (E.D. Mich. Apr. 30, 2015) (Cleland, J.) (collecting cases) ("A criminal defendant has no federal constitutional right to a corporeal lineup."); *Paris v. Rivard*, No. 11-15162, 2015 WL 1245772, at *18 (E.D. Mich. Mar. 18, 2015) (Lawson. J.) (citations omitted) ("An accused has no constitutional right to a pretrial lineup"); *Carter v. Howes*, No. 2:08-CV-14228, 2011 WL 6003905, at *8 (E.D. Mich. Dec. 1, 2011) (Roberts, J.) ("The Constitution, however, does not create a right to a lineup."); *United States v. Ostertag*, 619 F.2d 767, 771 (8th Cir. 1980) ("Appellant points to no constitutional right to a lineup and the cases indicate no such right exists.") (citations omitted); *Morris v. Giurbino,* 162 F. App'x 769, 771 (9th Cir. 2006) (unpublished) ("[T]he United States Supreme Court has never held that a criminal defendant has a constitutional right to a pretrial lineup.").

Defendant claims that when a witness has not made a pretrial identification—to which Defendant is not entitled—identification testimony at trial runs afoul of the Due Process Clause. (Doc. 35 at 4.) But Defendant's claim ignores a clear holding by the Supreme Court that the Due Process Clause only

extends to situations in which pretrial identification involving improper law enforcement conduct (such an as improper lineup) has occurred—*not* situations in which a trial witness has not made any pretrial identification. Specifically, in *Perry v. New Hampshire*, the Supreme Court explained that with regards to eyewitness identification testimony, Due Process concerns are triggered "when *the police* have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." 132 S. Ct. 716, 720 (2012) (emphasis added). The Court indicated that it was concerned with police "rigging identification procedures, for example, at a lineup, showup, or photograph array." *Id*. In other words, "what triggers due process concerns is police use of an unnecessarily suggestive identification procedure, whether or not they intended the arranged procedure to be suggestive" *Id*. at 721. But the Court clearly held that "[w]hen no improper law enforcement activity is involved . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id*. The Court further held that the "the Due Process Clause *does not* require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under

unnecessarily suggestive circumstances arranged by law enforcement." *Id*. at 730 (emphasis added). Here, because the police did not conduct a line-up, photo array, or any other pre-trial identification procedure involving the eyewitnesses to the bank robbery, there can be no claim of improper police conduct. Consequently, Due Process concerns are simply not triggered, and the proper means to challenge any in-court identification of the defendant is through cross-examination and argument.

Notably, in *United States v. Whately*, the Eleventh Circuit Court of Appeals addressed a similar argument by a defendant in a bank robbery case who challenged the admission of in-court identifications of himself as the bank robber:

> Whatley argues that the in-court identifications were unnecessarily suggestive because he was seated at the defense counsel table, he was the only African–American man in the courtroom other than courtroom personnel, he had never been identified in a line-up or array of photographs before trial, and he was first seen by the bank employee witnesses during their testimony.

*United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir.) cert. denied, 134 S. Ct. 453, 187 L. Ed. 2d 303 (2013).

The *Whatley* Court easily concluded that "[u]nder *Perry*, the admission of the in-court identifications of Whatley did not violate his right to due process because he cannot establish that the suggestive circumstances of the identifications were the result of improper police conduct." *Id*. The Eleventh Circuit noted that

that the defendant's placement at a table with his lawyer was "customary" and "not the result of improper police conduct." *Id.*

Other courts have similarly applied *Perry* in rejecting challenges to in-court identifications where prior police conduct is not being challenged. *See, e.g.*, *Johnson v. Burt*, No. 2:11-CV-15108, 2015 WL 5821514, at *6 (E.D. Mich. Oct. 6, 2015) (Duggan, J.) ("Consequently, under *Perry*, the question of the reliability of the in-court identification was for the jury to decide"); *Roberts v. Bell*, No. 08-CR-13362, 2013 WL 5448933, at *4 (E.D. Mich. Sept. 30, 2013) (Ludington, J.) ("Petitioner has not shown that the identification at issue resulted from unnecessarily suggestive circumstances arranged by law enforcement. Consequently, under *Perry,* the question of the reliability of Runkel's in-court identification was for the jury to decide"); *Slusser v. Wolfenbarger*, No. 2:10-CV-14979, 2013 WL 1789276, at *7 (E.D. Mich. Apr. 26, 2013) (Borman, J.) (same); *Davis v. Ludwick*, No. 10-CV-11240, 2013 WL 1212833, at *13 (E.D. Mich. Mar. 25, 2013) (Goldsmith, J.) (citing *Perry* and noting that "the Supreme Court held that the Due Process Clause does not require preliminary judicial inquiry into the reliability of an eyewitness identification unless the identification was procured under unnecessarily suggestive circumstances arranged by law enforcement officers. In the absence of official misconduct, the reliability of eyewitness identification is a matter for the jury to determine."); *United States v. Jackson*, No.

2:14-CR-42, 2015 WL 4557330, at *5 (E.D. Tenn. July 27, 2015) ("While there is no question that there is a degree of suggestiveness to an in-court identification, it is not a result of improper law enforcement conduct. Moreover, the Defendant has not cited one case nor has the Court found one that held that a witness is precluded from identifying a defendant in-court where there have been no previous identifications in the presence of law enforcement.").

Thomas claims that "[s]everal other courts throughout the country have concluded than an in-court identification without a previous line-up or photo array is unduly suggestive" and cites two cases in support of this proposition: *Kennaugh v. Miller*, 289 F.3d 36 (2d Cir. 2002) and *United States. v Rundell*, 858 F.2d 425 (8th Cir. 1988).  (Doc. 35 at 5.)  But neither *Kennaugh* nor *Rundell* (which both pre-date *Perry*) actually reached this conclusion—or anything close to it.  In *Kennaugh*, the Second Circuit noted that the case was "unusual" because it involved an in-court identification by a witness who "had participated in a lineup as well as several photo arrays and was unable to identify the petitioner during any of these repeated pretrial confrontations. . . ." *Kennaugh v. Miller*, 289 F.3d 36, 46 (2d Cir. 2002).  In *Rundell*, the Eight Circuit concluded that an in-court identification, without any previous line-up or photo array, was "sufficiently reliable." *United States v. Rundell*, 858 F.2d 425, 427 (8th Cir. 1988).  And to the extent that *United States. v. Hill,* 967 F.2d 226 (6th Cir. 1992) (doc 35. at 5)

suggested that the Due Process Clause extends to in-court identifications "when the identification takes place for the first time at trial" and where there is no allegation of prior police misconduct, that holding is clearly no longer valid in light of *Perry*. *Cf. Whatley*, 719 F.3d at 1215 (noting that *Perry* abrogated prior holdings by the Eleventh Circuit that had required judicial prescreening for in-court identifications even when those identifications did not involve allegations of improper police conduct).

Because there is no allegation of improper police conduct relating to pretrial identification in this case, under *Perry*, the jury, rather than this Court, must decide the reliability of any eyewitness testimony identifying Defendant as the bank robber. 132 S. Ct. at 728 ("The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness."); *see also Whatley*, 719 F.3d at 1216 (11th Cir.) (citations omitted) ("*Perry* makes clear that, for those defendants who are identified under suggestive circumstances not arranged by police, the requirements of due process are satisfied in the ordinary protections of trial. These protections include the right to confront witnesses, the right to effective assistance of an attorney who can expose the flaws in identification testimony on cross-examination, the right to eyewitness-specific jury instructions as adopted by the jurisdiction, and the right to

be presumed innocent until found guilty beyond a reasonable doubt by a jury of the defendant's peers. Due process imposes no requirement of a preliminary examination for an in-court identification.").

II. **Photographs of Defendant Are Proper Evidence to Help the Jury Determine Whether He Is the Individual Seen Robbing the Huntington Bank in Surveillance Video**

Defendant also seeks to exclude photographs of him that law enforcement obtained by accessing his Facebook page.[1] These photographs show what Defendant looks like, which, of course, makes them relevant to the question of whether he is the individual shown in surveillance footage of the bank robbery (which features close-ups of the bank robber's face). In his motion, Defendant identifies two ways that his appearance in these photographs differs from the appearance of the bank robber in the surveillance footage: (1) he notes that the bank robber is wearing a different shirt than Thomas is seen wearing in any of the

---

[1] Defendant indicates that he "does not concede that the photos would overcome the evidentiary hurdle set forth in Fed. R. Evid. 901" but assumes that they would be properly authenticated for purposes of advancing his motion. (Doc. 35 at 6-7.) The government anticipates introducing testimony from the specific police officer who obtained Thomas's Facebook photographs from the internet. The government anticipates that this officer will detail how he searched Facebook for Thomas's name, viewed Thomas's publicly-accessible Facebook page, and captured various photographs of Thomas that were on that page. Such testimony will meet the requirements of Fed. R. Evid. 901(b)(1) in authenticating the photographs as it is testimony of "a witness with knowledge . . . that an item is what it is claimed to be." Furthermore, the photographs alternatively satisfy Fed. R. Evid. 901(b)(4) because they contain distinctive characteristics of Thomas, such as his face, his tattoos, and a hat bearing the name to his employer (Rite Touch Auto).

captured Facebook photographs and (2) he claims that the hat worn by Mr. Thomas in one Facebook photograph is different than that hat worn by the bank robber. (Doc. 36 at 6-7.) However, whether Defendant is wearing different clothing in his Facebook photographs than the robber was wearing at the time of the bank robbery is not a basis for exclusion. Rather, these are differences that can be highlighted for the jury at trial in comparing the photographs—not in seeking to preclude their comparison altogether.

Courts have routinely allowed for the introduction of photographs of a defendant when identity is a contested issue at trial. For example, in *United States v. Thomas,* a bank robbery case involving surveillance video, the Sixth Circuit considered whether it was proper for the district court to admit "ten photographs of Thomas ranging over a span of seven years." Those ten photographs were "arrest photos," but "[had] no law enforcement markings," and "depict[ed] a head and shoulders likeness of Thomas wearing civilian clothing." *United States v. Thomas*, 223 F. App'x 447, 457 (6th Cir. 2007) (unpublished). The Sixth Circuit found that the admission of these photographs was proper:

> These photographs were probative of the robber's identity, a central issue of fact for the jury to determine. The jury was never told under what circumstances the photographs were taken. Where photographs of a defendant are admitted for a permissible purpose and do not reveal that they were taken in connection with the defendant's prior arrest, the mere fact that they were mug shots does not undermine the propriety of their admission.

11

223 F. App'x 447, 455 (6th Cir. 2007) (citations omitted); *see also United States v. Balter*, 91 F.3d 427, 442 (3d Cir. 1996) (upholding the admission of a six year-old yearbook photograph of a defendant despite his objection that "it was old and depicted him when he was 'a mere adolescent.'").

Just as in *Thomas*, the Facebook photographs of Defendant are highly probative of the central issue in this case, the identity of the bank robber, and are proper evidence relating to that issue.

### III. The Government Does Not Intend to Introduce Testimony Revealing Thomas's Parole Status

Defendant "requests the Court to bar any references to Mr. Thomas's parole status or any line of questioning that would lead the jury to infer that he is on parole." (Doc. 35 at 8.) Defendant also offers to stipulate that the residence from which a pair of shorts was recovered was his residence. (*Id*.)

The government does not intend to introduce testimony that reveals that Defendant was on parole at the time of the events in question. Specifically, the government will not elicit testimony from any parole agents that it calls regarding their precise law enforcement responsibilities or the nature of their familiarity with Thomas. Rather, the government will limit such testimony to the fact that these witnesses are employed in a law enforcement capacity and, in the case of Thomas's parole agent, that she was familiar with Thomas and his residence

12

through her work.[2]  Consequently, Defendant's motion to bar reference or testimony to his parole status is moot.

### IV. Conclusion

For the reasons detailed above, the government respectfully requests that the Court: (1) deny Defendant's motion to preclude eyewitnesses from identifying the bank robber; (2) deny Defendant's motion to preclude the government from introducing photographs of Defendant; and (3) find that Defendant's motion to bar reference or testimony relating to his parole status is moot.

Respectfully submitted,

BARBARA MCQUADE
United States Attorney

s/Andrew J. Yahkind
ANDREW J. YAHKIND
JEROME F. GORGON
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9100
andrew.yahkind@usdoj.gov
jerome.gorgon@usdoj.gov

---

[2] The government reserves the right to introduce evidence of Defendant's parole status if Defendant places this fact into issue.

**Certificate of Service**

I hereby certify that on December 7, 2015, I electronically filed the foregoing motion and memorandum in support with the Clerk of the Court using the ECF system which will send notification of such filing to the following via electronic mail:

Attorney of Record
Natasha Webster
Email: Natasha_webster@fd.org

s/Andrew J. Yahkind
ANDREW J. YAHKIND
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9565
E-Mail: andrew.yahkind@usdoj.gov