UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                    Case No. 15-20487

Jabron Thomas,                                              Sean F. Cox
                                                                   United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION IN LIMINE SEEKING TO EXCLUDE IN-COURT
IDENTIFICATIONS (D.E. NO. 35)**

The instant action involves Defendant Jabron Thomas's ("Defendant") alleged robbery of a Huntington Bank in Redford, Michigan on July 14, 2015. At trial, one of the central issues will be identification of the suspected bank robber. On December 2, 2015, Defendant filed a Motion in Limine seeking the exclusion of in-court identifications by three eyewitnesses because Defendant had never been presented to them in a line-up or a photo array. (D.E. No. 35). The Government opposed the motion. (D.E. No. 40). The Court heard oral argument on December 9, 2015. On December 10, 2015, the Court issued an Opinion and Order granting Defendant's motion to the extent that an evidentiary hearing was scheduled to determine whether or not the identifications were reliable under a totality of the circumstances. (D.E. No. 50). On December 14, 2015 and on December 15, 2015, pursuant to *U.S. v. Hill*, 967 F.2d 226 (6th Cir. 1992), an evidentiary hearing was conducted. As in *Hill*, both the jury and Defendant were removed from the courtroom.

1

The Court has closely considered the five factors propounded in *Biggers* and has determined that the testimony of Brenda Pegler, Lenora Robertson, and Tujuana Jones are sufficiently reliable under a totality of the circumstances. For the reasons set forth below, the Court shall DENY Defendant's Motion in Limine seeking to exclude the in-court identifications of Defendant.

## ANALYSIS

I. *Biggers* **Analysis**

A two-step analysis applies in determining whether or not identification evidence is admissible. The first step requires the defendant to show that the pre-trial identification procedure was impermissibly suggestive. *Hill*, 967 F.2d at 230. If the defendant meets this initial burden, the second step requires the trial court to determine whether, under a totality of the circumstances, the testimony was nonetheless reliable and therefore admissible. *Id*. Five factors are relevant in determining reliability: "(1) the opportunity to view the perpetrator during the crime; (2) the witness's degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification." *Id*. (quoting *Biggers*, 409 U.S. at 199-200). These factors are to be weighed against "the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). "'As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification.'" *Id*. (quoting *U.S. v. Causey*, 834 F.2d 1277, 1285 (6th Cir. 1987)).

Because the Court has assumed, without deciding, that for purposes of this case, the in-

court identifications of Defendant would be impermissibly suggestive[1], it will apply step two of the *Biggers* analysis below.

      **A.**      **Brenda Pegler - Witness #1**

Brenda Pegler was the first witness to testify. Pegler reviewed video surveillance of the robbery once with detectives approximately one week prior to her testimony. Pegler provided statements to the police after the robbery had taken place. At the time of the robbery, Pegler was working at Huntington Bank as a teller. She testified that she was in the bank when it was robbed. Pegler stated that a man walked up to her window and that she initially noticed that he was wearing surgical gloves. Pegler described the man as black, being in his thirties, and weighing at least 176 pounds. Pegler testified that the man was wearing a black baseball cap with a D on it. Pegler testified that the man had pulled out a gun and set it on the counter in front of her. Moreover, Pegler emphasized that, "all the while, I was staring at him, looking at him right in the eyes..." Pegler stated that she would never forget his eyes, and she described them as brown, and not large. She added that they were not crooked or set in. Pegler testified that the man was approximately one foot away from her during their encounter. Pegler testified that the encounter lasted approximately 20 seconds.

This Court has determined that the first two *Biggers* factors have been easily satisfied. As to the first factor, Pegler was directly facing the perpetrator during their encounter. The only thing between the suspect and Pegler was a transparent, bullet-proof glass. Nothing obstructed her view as evidenced by her testimony. As to the second factor, Pegler's testimony reflected that she was focused on the perpetrator throughout the duration of their encounter. Notably,

---

[1] *See Hill*, 967 F.2d at 232.

Pegler testified that she would never forget the man's eyes.

The third *Biggers* factor focuses on the accuracy of the witness's prior descriptions of the perpetrator. Defendant argues that there are discrepancies between Pegler's prior statements to the police. Specifically, Defendant takes issue with Pegler's varied descriptions as to Defendant's height and weight. After reviewing the record, the Court concludes that, Pegler's testimony is sufficiently reliable in this regard. The discrepancies are minor and at worst, ambiguous. *Hill*, 967 F.2d at 233.[2] Thus, the third *Biggers* factor supports the reliability of Pegler's identification.

The fourth *Biggers* factor focuses on the level of certainty demonstrated by the witness when identifying the suspect. Here, an identification has not yet taken place. Thus, the Court finds that this factor is not applicable. However, the Court notes that Pegler appeared to be certain in her description of the suspect. Again, Pegler testified that she would never be able to forget the man's eyes.

The fifth *Biggers* factor weighs in favor Pegler's testimony being sufficiently reliable. At the time of Pegler's testimony, only five months had passed since the robbery occurred.[3]

Considering the totality of the circumstances, Pegler's identification is sufficiently reliable. Thus, it will be left to the jury to decide what weight to give the witness's testimony.

    **B.**     **Lenora Robertson - Witness #2**

The next teller to testify at the hearing was Lenora Robertson. Robertson testified that

---

[2] Under this factor, the Court in *Hill* similarly concluded that testimony was sufficiently reliable despite slight inaccuracies concerning the Defendant's height and hair color.

[3] In *Hill*, five years had passed between the robbery and the in-court identification.

she was working in the bank at the time of the robbery. Robertson provided statements to the police after the robbery had taken place. Robertson testified that the perpetrator was in front of her window when he robbed her at gunpoint. Robertson testified that the man was approximately one foot away from her during their encounter, and that the encounter lasted approximately 30 seconds. Robertson noticed that the man was wearing surgical gloves, and a black baseball cap with a D on it. Through the gloves, Robertson testified that something appeared wrong with the man's hands, and that his hands appeared lighter than his face. She described the man as black, being in his thirties, weighing approximately 170 pounds. Robertson testified that the man's lips were discolored, lighter than his face, and that he had a goatee. Robertson also testified that during the robbery, her manager was inquiring about the balance of her drawer. During that time, Robertson stated that she was thinking to herself, "I am being robbed. I am being robbed. I was trying to get the money out..."

After a review of Robertson's testimony, the Court determines that the first *Biggers* factor supports the reliability of Robertson's identification. Robertson had an unobstructed opportunity to view the perpetrator. The only thing between the suspect and Robertson was a transparent, bullet-proof glass. The man was approximately one foot away from her throughout their encounter.

The second *Biggers* factor supports a finding of reliability. Defendant argues that Robertson was distracted as a result of her manager's inquiries. However, Robertson maintained that her focus was on the robbery despite her manager's questions about the balance in her drawer.

The third *Biggers* factor also weighs in favor of reliability. Robertson's testimony was

<007>

consistent and accurate. She testified as to the suspect's race, his clothing, the gloves, and the discoloration she observed.

Since an identification has not yet been made, the Court finds that the fourth *Biggers* factor is inapplicable here. However, the Court notes that Robertson was certain in her descriptions of the suspect, which seems to weigh in favor of reliability.

Finally, the fact that five months had passed between the time of the robbery and Robertson's testimony, supports a finding of reliability. Thus, the fifth *Biggers* factor has been satisfied.

Robertson's identification is sufficiently reliable under a totality of the circumstances. Thus, it will be left to the jury to decide what weight to give the witness's testimony.

C.    Tujuana Jones - Witness #3

The last witness to testify at the evidentiary hearing was Tujuana Jones. Jones was a customer at the bank on the day of the robbery. Jones provided statements to the police after the robbery had taken place. Jones testified that she had initially seen footage of the robbery on the news. In addition to the news footage, Jones reviewed the video surveillance twice with detectives approximately one week prior to her testimony. Jones testified that she was present at the bank at the time it was robbed. Jones testified that the man approached her after he had left the teller window. During their encounter, Jones testified that the man grabbed her arm and asked her to go with him. Jones testified that the man was approximately one foot away from her, and that the encounter lasted no longer than thirty seconds. Jones testified that during their encounter, her focus was on the man. She described the man as African American with a light to medium complexion. She testified that he had facial hair around his mouth, and that he was

wearing gloves.

After a consideration of Jones's testimony and the record, the first and second *Biggers* factors support the reliability of Jones's identification. As to the first factor, Jones had an unobstructed opportunity to view the perpetrator. His face was approximately one foot away from hers. There was nothing in between them. As evidenced by the Government's exhibit No. 20, Jones stood face-to-face with the perpetrator. As to the second factor, the perpetrator made physical contact with Jones. Her attention was on him. She did not testify that she had been distracted by something other than the perpetrator.

The third *Biggers* factor also supports the reliability of Jones's identification. Defendant argues that Jones' prior descriptions were general and lacked the specificity contained in her testimony. However, Jones' testimony is consistent with her prior statements, which appear to be accurate descriptions. Although Jones's prior statements did contain some discrepancies with regard to the suspect's height and weight, the discrepancies are not substantial enough to render Jones' identification so unreliable as to warrant its exclusion.

Again, the Court finds that the fourth *Biggers* factor is inapplicable here because an identification of Defendant has not yet been made. However, the Court notes that Jones appeared steadfast in her descriptions and did not appear reluctant in her ability to describe the suspect.

Like Pegler and Robertson, the fifth *Biggers* factor weighs in favor of reliability with respect to Jones's testimony.

Jones's identification is sufficiently reliable under a totality of the circumstances. Thus, it will again be left to the jury to decide what weight to give the witness's testimony.

## CONCLUSION

For the foregoing reasons, the Court shall DENY Defendant's Motion in Limine and it shall allow in-court identifications of Defendant by Brenda Pegler, Lenora Robertson, and Tujuana Jones.

**IT IS SO ORDERED**.

S/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: December 15, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 15, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy<br>
Case Manager