UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America ,

      Plaintiff,

v.                                Case No. 15-20487

Jabron Thomas,               Sean F. Cox
                                  United States District Court Judge

      Defendant.

_____/

## OPINION & ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL (D.E. No. 73)

On December 21, 2015, following a jury trial, Defendant Jabron Thomas ("Defendant") was convicted of one count of armed bank robbery, one count of brandishing a firearm during and in relation to a crime of violence, and one count of felon in possession of a firearm. (D.E. No. 65, Jury Verdict Form).

This matter is currently before the Court on Defendant's Motion for Judgment of Acquittal and New Trial. (D.E. No. 73). The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid in the decisional process. *See* E.D. Mich. LR 7.1(f)(1). The Court therefore orders that the motion will be decided upon the briefs. For the reasons set forth below, the Court shall **DENY** Defendant's motion.

## BACKGROUND

In this action, Defendant was charged in a First Superseding Indictment with the following: Count One – Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); Count Two – Using, Carrying, and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c); Count Three – Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1)[1]; and Count Four – Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  (D.E. No. 29, Superseding Indictment).  The Superseding Indictment also contained forfeiture allegations.  The Government alleged that Defendant had robbed a Huntington Bank in Redford, Michigan on July 14, 2015.  (Superseding Indictment, at 1).  The Government claimed Defendant knowingly carried and brandished a firearm during the alleged bank robbery.  (Superseding Indictment, at 2).  Defendant was arrested for the bank robbery at his place of employment on July 18, 2014.  At the time of his arrest, Defendant is alleged to have been in knowing possession of a firearm.  (Superseding Indictment, at 3).

Jury trial as to Defendant commenced on December 14, 2015.  At the close of the Government's proofs, Defendant's counsel made an oral motion for judgment of acquittal as to all counts, which this Court denied on the record.  (D.E. No. 82, Tr. Transcript at 141-47).

On December 21, 2015, the jury found Defendant guilty on all three counts.  On January 20, 2016, Defendant filed a "Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29 And A New Trial Pursuant to Federal Rule of Criminal Procedure 33."

---

[1] Count Three of the Superseding Indictment was dismissed as to Defendant on December 14, 2015.

(D.E. No. 73, Def.'s Br.).  The Government filed its Response on February 10, 2016.[2]  (D.E. No. 76, Gov't Resp.).

## ANALYSIS

### I.    Judgment of Acquittal

Defendant seeks entry of a Judgment of Acquittal as to Count Four, based on insufficiency of the evidence.  (Def.'s Br. at 2).

In considering a motion for judgment of acquittal under Criminal Rule 29, this Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the elements of the crime beyond a reasonable doubt.  *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994); *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 1979).  In doing so, the Court does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury.  *Id.*

The Sixth Circuit has explained that a defendant claiming insufficiency of the evidence "bears a very heavy burden."  *Abner*, 35 F.3d at 253.  On review, all evidence must be construed in a manner most favorable to the Government.  Moreover, circumstantial evidence alone is sufficient to sustain a conviction.  *Id.*

---

[2] Defendant asks that the Court strike the Government's Response as untimely.  Defendant cites *United States v. Gordon*, 2013 WL 396179 (E.D. Mich. Feb. 1, 2013) to substantiate his position.  In *Gordon*, the Court struck the defendant's Reply brief as untimely after it was submitted nearly two months after the Government had filed its response.  Here, the Government's Response was filed merely one week after the deadline imposed by E.D. Mich. LR 7.1.  Unlike *Gordon*, the delay here does not necessitate the relief Defendant seeks.  Thus, the Court shall not strike the Government's Response.

3

A.     **Sufficiency of the Evidence**

Defendant was convicted of being a felon in possession of a firearm in violation of 18

U.S.C. § 922(g)(1).  In order to secure a conviction for felon in possession, the Government must

prove that: (1) the defendant had a previous felony conviction; (2) that the defendant knowingly

possessed the firearm specified in the indictment, and (3) that the firearm traveled in or affected

interstate commerce.  *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007).  At the center

of this dispute is whether the Government established § 922(g)(1)'s element of possession.

A defendant may be convicted under § 922(g)(1) based on actual or constructive

possession of a firearm.  *Id.*  While actual possession requires that the defendant have

"immediate possession or control" of the firearm, constructive possession only requires that the

defendant "knowingly has the power and the intention at a given time to exercise dominion and

control over an objection, either directly or through others."  *Id.* (internal citations and quotations

omitted).  In proving constructive possession, it is well established that an individual's presence

near a firearm, on its own, is not a sufficient showing of the "requisite knowledge, power, or

intention to exercise control over" over the firearm.  *United States v. Birmley*, 529 F.2d 103,

107-108 (6th Cir. 1976).  And, while mere presence is insufficient to establish constructive

possession, "other incriminating evidence, coupled with presence,... tip the scale in favor of

sufficiency."  *Id.* at 108.  Both actual and constructive possession may be established by direct or

circumstantial evidence.  *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973).

In determining the sufficiency of the evidence advanced by the Government to support a

theory of constructive possession, the Sixth Circuit has instructed courts to consider the

following:

4

> When the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less.
>
> Of course, this means the opposite should also be true-the less evidence tying a defendant to a gun at the time of arrest, the greater the circumstantial evidence must be to support a conviction.

*Grubbs*, 506 F.3d at 440 (internal citations omitted).

Defendant argues that the Government failed to prove that Defendant actually or constructively possessed the firearm retrieved from the office Defendant was in prior to the time of his arrest.

### 1.     Actual Possession

Defendant first makes the following argument regarding actual possession: because no witness testified to seeing Defendant with the firearm seized, actual possession has not been established. As the Government correctly notes, however, Defendant's argument disregards the fact that actual possession may be established through circumstantial evidence. *See Craven*, 478 F.2d at 1333. Accordingly, Defendant's cursory argument as to actual possession is not persuasive.

Since possession can alternatively be established constructively, the Court shall not decide whether the Government established actual possession. Instead, the Court shall decide whether the evidence adduced at trial at least establishes constructive possession.

### 2.     Constructive Possession

Defendant argues that the Government failed to establish constructive possession of the firearm. In making this argument, Defendant asserts that the Government's position is premised entirely upon Defendant's mere presence in an office where the firearm was retrieved. (Def.'s

5

Br. at 12).  Defendant compares the facts presently before the Court to the facts in *United States v. Grubbs*, where the Sixth Circuit established that presence, without more, is insufficient to establish constructive possession.  (Def.'s Br. at 12) (citing *Grubbs*, 506 F.3d at 439).  To substantiate this claim, Defendant alleges that the testimony at trial only established that: (1) Defendant was merely in the office prior to a firearm being found; (2) that several employees also had access to the office where the firearm was found; (3) that no one testified to observing Defendant trying to "secrete" the firearm; and (4) that it has not been established that Defendant had knowledge that the firearm was in the office.  (Def.'s Br. at 11).

The problem with Defendant's argument is that it largely disregards other circumstantial evidence presented in this case that "tip the scale in favor of sufficiency."  *Birmley*, 529 F.2d at 108.  Here, the record before the jury demonstrated that Defendant was arrested at his place of employment (Rite Touch Auto) a few days after he was allegedly seen on camera robbing a bank with a firearm that was never recovered.  Upon arriving to Rite Touch Auto, Officer Bommarito testified that he had observed Defendant walking through the front door and then quickly turning back into the building when he saw that officers were approaching.  (D.E. No. 75, Trial Transcript at 34-35).  At this point, Latico Marshall (an employee at Rite Touch Auto) testified that she observed Defendant quickly walk into an interior office and close the door behind him.  (D.E. No. 81, Trial Transcript at 99, 103-04).  Several minutes later, officers entered the reception area and asked whether Defendant had entered the office.  Defendant made his way out from the office before anyone had the opportunity to call for him.  After Defendant's arrest, a firearm was retrieved from an unlocked drawer in the office where he had fled.

A reasonable jury could infer from these facts that Defendant had constructive possession

of the retrieved firearm.  As an initial matter, Defendant was observed to have fled to the very office that the firearm was found.  *See Campbell*, 549 F.3d at 374 ("evidence of some other factor–including... evasive conduct...–coupled with proximity may suffice.") (internal quotations and citations omitted).  Second, Defendant was the only person observed to have been inside the office between the time he entered to the time the gun was retrieved.  Third, the firearm was located in an unlocked drawer.  And, finally, while others may have had access to the office, no one claimed the firearm found therein.

Moreover, Defendant's reliance on *United States v. Grubbs* is misplaced.  *Grubbs* is factually distinguishable from the instant case.  There, a defendant was charged with possession of a weapon that was found underneath the mattress in his brother's room.  The Sixth Circuit determined that there was insufficient evidence to establish constructive possession of a firearm where the defendant neither: (1) owned the home where the firearm was found; (2) had *contact* with the room where the firearm was found; or (3) had knowledge of the firearm's location. *Grubbs*, 506 F.3d at 440.  Unlike Defendant, the defendant in *Grubbs* was not observed evading law enforcement, entering the room where the firearm was subsequently found, and closing the door behind him.  In fact, the *Grubbs* defendant "was not located near the room in which the guns were discovered..." at all.  *Id.* at 441.  The most notable difference between *Grubbs* and the instant case appears to be the fact that the defendant's brother in *Grubbs* testified to owning the firearm retrieved.  *Id.* at 437 ("At trial, Paul testified that he owned the nine-millimeter handgun... The Government did not introduce any evidence contradicting Paul's testimony that the handgun was his or that it was discovered under the pillow on which he regularly slept."). Here, no one has claimed the firearm.  These factual differences are significant in that they rise

to the level of circumstantial evidence that weigh in favor of sufficiency.

Accordingly, the jury's conclusion that Defendant possessed the firearm was rationally inferred from the evidence. Thus, the Court shall not disturb the verdict as it relates to the felon in possession count.

## II.     New Trial

Pursuant to Federal Rule of Criminal Procedure 33, the court "may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). "The decision to grant or deny a new trial rests within the district court's sound discretion." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). "[T]he defendant bears the burden of proof that a new trial is warranted and 'such motions should be granted sparingly and with caution.'" *United States v. Dolan*, 134 F.3d 372 at *3 (6th Cir. 1997) (quoting *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993)).

Here, Defendant seeks a new trial due to prejudicial errors allegedly caused by: the Government's failure to comply with the notice requirement of Rule 404(b); the improper testimony of Defendant's parole officer; and prosecutorial misconduct. These alleged errors stem from the Government's decision to elicit identification testimony from Defendant's parole officer during the trial. Defendant additionally seeks a new trial as a result of alleged jury misconduct. Specifically at issue is an experiment conducted by the jurors regarding Defendant's Nike shoe. (Def.'s Br. at 2.)

### A.     New Trial Due To Parole Officer's Identification Testimony

8

Defendant advances three arguments pertaining to parole officer Sarah Wald's testimony. The Court shall address each in turn. For the reasons stated below, the Court finds that Defendant is not entitled to a new trial based on Sarah Wald's identification testimony.

### 1.    Failure to Comply with Notice Requirement of Rule 404(b)

Defendant asserts that the Government failed to comply with the reasonable notice requirements set forth in Rule 404(b).[3] (Def.'s Br. at 14). Specifically, Defendant alleges that the Government failed to give advance notice of its intent to identify Defendant through his parole officer at trial. *Id.* Defendant claims this failure resulted in prejudice. *Id.* Defendant's argument is flawed for a number of reasons.

First, evidence that would trigger Rule 404(b)'s notice requirement was ***never*** introduced by the Government. Sarah Wald did not identify herself as Defendant's parole officer. Nor did she testify as to any past "crime, wrong, or other act," that would implicate Defendant's character in any way. Accordingly, evidence of Defendant's parole status was not introduced to the jury.      Second, contrary to Defendant's assertion, the Government did provide advance notice of its intent to elicit identification testimony from Defendant's parole officer. In responding to Defendant's request to bar any reference to Defendant's parole status, the Government stated that it did not intend to introduce testimony that revealed that Defendant was on parole at the time of the events in question. (D.E. No. 40, Gov't Resp. to Def's MIL at 12).

---

[3] Federal Rule of Evidence 404(b) prohibits the use of "evidence of a person's character or character trait to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(b)(1). However, character evidence may be admissible for other purposes. FED. R. EVID. 404(b)(2). Upon request by a defendant, the Government is required to "provide reasonable notice of the general nature of any such evidence that it intends to offer at trial." FED. R. EVID. 404(b)(2)(A).

The Government specified that it "will limit such testimony to the fact that these witnesses are employed in a law enforcement capacity and, in the case of [Defendant's] parole agent, that she was familiar with [Defendant] and his residence. *Id.*

Third, the assertion that Defendant has been prejudiced by the Government's alleged failure to provide notice is conclusory and is not accompanied by any substantive analysis.

### 2.      Parole Officer Sarah Wald's Identification Testimony Was Properly Admitted And Not In Violation of *Calhoun*

Although no reference was made to Defendant's parole status at trial, Defendant now argues that he was denied a fair trial when his parole officer was allowed to identify him as the individual in the bank surveillance video. (Def.'s Br. at 15). Defendant seeks a new trial based upon his "inability to cross-examine" his parole officer without bringing out prejudicial information about Defendant's criminal history.[4] *Id.* at 16. Defendant relies largely on *United States v. Calhoun*, 544 F.2d 291 (6th Cir. 1976), where the Sixth Circuit was tasked with determining the impropriety of parole officers testifying at trial for the sole purpose of making an ordinary identification. *Id.* at 294-95. There, the court held that a parole officer's identification testimony substantially affects a defendant's right to cross examine and that its probative value is thus substantially outweighed by the danger of unfair prejudice. *Id.* at 295-96. However, *Calhoun's* holding was subsequently narrowed in *United States v. Maddox*, 944 F.2d 1223 (6th Cir. 1991), when the Sixth Circuit clarified that:

---

[4] As an initial matter, the parties dispute whether defense counsel actually objected to the identification testimony at trial. After reviewing the transcript, it is clear that defense counsel's main concern prior to, and during, trial was ***barring any reference*** to Defendant's parole status. Defense counsel ***did not*** object to the identification on the basis that it would limit Defendant's ability to cross examine the parole officer. However, this failure does not have any bearing on the Court's analysis of the issues before it, and neither party has argued otherwise.

> *Calhoun* was a factually unique case, distinct from this case in several key respects.  In *Calhoun*, the government called the defendant's parole officer as a witness for the sole purpose of identifying him from a photograph.  We held that, under the unique circumstances of the case, ***the defendant was illegitimately deprived of the right to cross-examine the witness***.  We reasoned that, if the jury found out about the nature of the relationship between the two of them, ***the jury could infer that the defendant had a prior criminal record***.  Thus, because of the preexisting relationship between the two, ***the defendant would have had to go into highly prejudicial matters*** in order to explore possible motives that his former parole officer might have had in identifying him.

*Id.* at 1231 (emphasis added).

Despite the fact that Defendant's parole officer was permitted to identify him at trial, the same concerns underlying *Calhoun's* holding do not exist here.  Notably, unlike *Calhoun*, Defendant had already conceded to being a felon.  This point is critical because the jury here was already aware that Defendant had a criminal record.  Additionally, because Defendant had already stipulated to a prior felony, defense counsel would not have had to go into "highly prejudicial matters" in order to explore Wald's motives for identifying Defendant.  The Sixth Circuit has confirmed that in cases, where, as here, "'the government is required to prove as an element of the offense that the defendant has previously committed a felony, as in a [felon-in-possession] prosecution, the potential for prejudice [from the jury hearing evidence of parole status] is substantially lessened.'"  *United States v. Griffin*, 476 Fed. App'x 592, 598 (6th Cir. 2011) (quoting *United States v. Griffin*, 389 F.3d 1100, 1103-04 (10th Cir. 2004)); *see also United States v. Wilhite*, 108 Fed. App'x 367, 370 (6th Cir. 2004) (emphasis added) ("[the defendant's] cross-examination of [his probation officer] was not hampered because the jury was aware that [the witness] was a probation officer... ***and [the defendant] conceded that he was a convicted felon***.").  Defendant conveniently fails to address the effect his stipulation has on the alleged prejudicial facts that may have arisen on cross.

11

Moreover, unlike the parole officer in *Calhoun*, Wald did not testify as to *when* she had

met with Defendant.  *See Calhoun*, 544 F.2d at 296 (citing *United States v. Poston*, 430 F.2d 706

(6th Cir. 1970)) (where it was held prejudicial and reversible error to have introduced evidence

before a jury that the defendant was on probation at the time of the alleged offense.).

Accordingly, the danger cautioned against in *Calhoun* did not exist here since there was no basis

under which the jury would infer that Defendant was on parole ***at the time*** of the alleged offense.

Also unlike *Calhoun* is the fact that here, multiple witnesses had already positively identified

Defendant.  Whereas in *Calhoun*, the only witness (aside from the parole officer) that positively

identified the defendant was a self-interested cooperator.  *Id.* at 292.

Based on Defendant's stipulation, and the other factual differences between this case and

*Calhoun*, any error that may have resulted from Wald's testimony was harmless.  Thus, a new

trial is not warranted.

### 3.    Prosecutorial Misconduct

Defendant also argues that the Government "committed prosecutorial misconduct by

implying that [Defendant] was on parole at the time of the offense," despite the representation

that it had no intention of doing so."  (Def.'s Br. at 16).  Defendant's cursory argument

misrepresents the record in this case.

Initially, the Court notes that "a criminal conviction is not to be lightly overturned on the

basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed

in context."  *United States v. Young*, 470 U.S. 1, 11 (1985).  The Sixth Circuit has constructed a

framework to review claims of prosecutorial misconduct.  *United States v. Carroll*, 26 F.3d

1380, 1384-90 (6th Cir. 1994).  Under this approach, the court should first determine whether the

12

prosecutor's statements were improper. *Id.* If the statements are determined to be improper, the court must next determine whether the impropriety rose to the level of flagrancy. *Id.* at 1385.

Defendant maintains that the first step is "easily satisfied" and is evidenced by the Government improperly calling his parole officer to the stand to identify him, in violation of *Calhoun*. (Def.'s Br. at 17). As a result, Defendant states that he was deprived of his right to cross-examine his parole officer "due to the further prejudice that would have occurred." *Id.* Defendant is wrong. It is first worth noting that the Government did not imply that Defendant was on parole at the time of the alleged offense. Moreover, the identification testimony elicited here does not violate *Calhoun* for reasons already stated. Further, Defendant's felony stipulation substantially lessened any "prejudice that would have occurred" as a result of cross-examination. *See Griffin*, 476 Fed. App'x at 598.

Defendant makes additional claims to substantiate the argument that the Government's improper conduct and statements rose to the level of flagrancy. The Court need not address these claims because Defendant has not shown impropriety in the first place. However, even if Defendant made this showing, he has not established flagrancy. Flagrancy is determined by considering the following four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the judge gave an appropriate cautionary instruction to the jury]; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Carroll*, 26 F.3d at 1385 (quoting *United States v. Leon*, 534 F.2d 667, 678-83 (6th Cir. 1976)).

Here, the Government did not make any comment, or elicit any testimony, referencing Defendant's parole status, and therefore ***could not*** have misled the jury or prejudiced defendant.

13

Second, the Government brought out the testimony in a manner consistent with its representation in its Response to Defendant's Motion in Limine.  Third, the Government's closing statement to the jury that Wald had "met with the Defendant nine times face-to-face in-person meetings" was made in order to bolster Wald's identification testimony, not to disclose Defendant's parole status.  Fourth, and most detrimental to Defendant's position, is the overwhelming strength of the evidence before the jury: (1) Defendant was positively identified by four witnesses; (2) the suspect's face was captured on video surveillance footage, allowing the jury to compare Defendant with the suspect depicted in the video; (3) social media photos of Defendant were admitted, allowing the jury to compare Defendant with the suspect depicted in the video; (4) Defendant's place of employment was in close proximity to the Bank; (4) articles of clothing retrieved from Defendant's home closely resembled the clothing worn by the suspect; and (5) the evidence of Defendant's recently-purchased car.

Based on the above, Defendant has not shown prosecutorial misconduct.

### B.      New Trial Due To Jury Misconduct

Defendant also requests that the Court grant him a new trial based on alleged jury misconduct.  Defendant relies on information derived from an informal meeting between two jurors and counsel.  This meeting took place after the jury's guilty verdict was received by the Court and the jurors were dismissed.  The Court had instructed that the jurors were free to leave, but could speak with counsel if they so chose.  Two jurors agreed and the discussion took place in the courtroom.  Defense Counsel asserts that during this meeting, one juror stated that several jurors took Defendant's Nike shoe into the bathroom to observe the Nike swoosh under different lighting.  Defendant alleges that the juror stated that the jury collectively used this "experiment"

14

to conclude that: (1) the surveillance video probably caused a lighting distortion on the swoosh similar to the one created by the bathroom lighting; and (2) this fact made it clear that the Nike shoes depicted in the video were the same as the shoes retrieved from Defendant.[5]  (Def.'s Br. at 21).

A criminal defendant must be "afforded the right to confront the evidence and the witnesses against him, and the right to a jury that considers only the evidence presented at trial." *Doan v. Brigano*, 237 F.3d 722, 733 n. 7 (6th Cir. 2001).  It is a well settled fact that "jury exposure to extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights." *Fletcher v. McKee*, 355 F. App'x 935, 937 (6th Cir. 2009) (citations omitted).  However, not all influence is extraneous. Extraneous influence is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir. 2007).  An experiment taking place outside the court is one example of an extraneous influence. *Id.* at 635 (internal citations and quotations omitted).

As a threshold matter, the Court notes that post-verdict meetings, from which Defendant now derives his allegations, are permitted in order to assist counsel in tactical matters (*i.e.* to obtain an assessment of their own performance and to improve their strategy moving forward). This, however, does not provide defense counsel with the opportunity to pry into the private, internal deliberations of the jury.  "[L]ong-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S. 107, 127 (1987).  Accordingly, where there is no extraneous influence, a court shall not disrupt the

---

[5] For purposes of this motion, the Court assumes these alleged statements were made by the jurors.

15

internal matters of the deliberation process.

Defense counsel's attempt to invalidate the jury's sound verdict fails for numerous reasons. First, the alleged in-court examination of the Nike shoe under different lighting did not create extrinsic evidence amounting to an extraneous influence on the jury. This case stands in contrast with *Doan v. Brigano*, 237 F.3d 722 (6th Cir. 2001), *overruled on other grounds* in *Wiggins v. Smith*, 539 U.S. 510 (2003). In *Doan*, a juror "conducted an experiment in her own home by putting "lipstick on her arm to simulate a bruise." *Id.* at 727. The purpose of this experiment was to test the accuracy of the defendant's testimony that he could not see the decedent's bruises in the dark. The juror subsequently reported her findings back to the jury. *Id.* In concluding that the experiment resulted in constitutional error, the Sixth Circuit noted that it was "not calling Doan's verdict into question by reviewing the private, internal deliberations of the jury." *Id.* at 733. Rather, the court explained that "what [made that] case different, and what trigger[ed] concerns of a constitutional dimension, [was] the fact that Juror A conducted an out-of-court experiment and reported her findings to the jury in the manner of an expert witness." *Id.* Here, no such out-of-court experiment took place. Moreover, the subject of the examination by the jury was an admitted piece of evidence.

In *Fletcher*, the Sixth Circuit clarified that "[t]he holding in *Doan* was not based on a finding that jury experiments are per se unconstitutional or that they always result in the creation of extrinsic evidence, but rather on the court's conclusion that '[f]or a juror to perform and report to other jurors the results of an out-of-court experiment... conflicts with [the defendant's] constitutional right to a fair and impartial jury that considers only the evidence presented at trial.'" *Fletcher*, 355 F. App'x at 939. The court in *Fletcher* distinguished "reenactments [that]

16

were conducted in the jury room, in the presence of all the jurors," from the out-of-court experiment performed by the sole juror in *Doan*.  Accordingly*, Doan* is distinguishable from cases where, as here: (1) the jury examined evidence in the jury room with all deliberating jurors present; and (2) the shoe examined was admitted into evidence. (*See* Gov't Resp. at 16-17) (citing numerous cases where courts have rejected claims of alleged constitutional violations based on juror conduct in deliberations).  Further, Defendant has not cited a single case where the mere handling and examining of an admitted piece of evidence, during deliberations, and in the presence of all jurors, amounts to a violation of a defendant's constitutional rights.[6]

Importantly, "jurors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdict.  *United States v. Avery*, 717 F.2d 1020, 1026 (6th Cir. 1983).  Defendant inappropriately characterizes this situation as one involving "scientific type of matters."  (Def.'s Br. at 22).  It is clear that the examination of evidence here related to the jury's common experience of perception.  Presumably, the jurors were deliberating and evaluating whether or not the shoe retrieved from Defendant was the same shoe depicted in the surveillance footage.  This is a question of fact relating to defense counsel's assertion at trial that the Nike swoosh in the video differed from the Nike swoosh on the shoe in evidence.  (D.E. No. 82, Trial Transcript at 136-37; D.E. No. 80, Trial Transcript at 20).  There was no extrinsic evidence created as a result of the jury's mere examination of the shoe under

---

[6] In his Reply brief, Defendant compares this case with *United States v. Farris*, No. 10-20675 (E.D. Mich. June 6, 2012), where the district court granted a new trial on the basis of jury misconduct during deliberations. While the district court did not file an opinion, the record indicates that the jury had conducted an experiment with a firearm by placing it in a freezer. This case is easily distinguishable: the jury in *Farris* actually altered the state of the firearm admitted into evidence by placing it in a freezer. No such manipulation of evidence occurred here.

allegedly different lighting. The jury did as it was urged: it examined the Nike swoosh. The Court shall not allow defense counsel to manipulate the unsworn statement of a juror in an effort to improperly reach the private, internal deliberations of the entire jury.

Moreover, even if the Court determined that the examination of the shoe resulted in constitutional error, any resulting prejudice could not have overcome the overwhelming evidence suggesting that Defendant was the robber depicted in the video: (1) the suspect's face was captured in full view on video surveillance; (2) four witnesses positively identified Defendant as the man depicted in the video; (3) the articles of clothing retrieved from Defendant's home resembled the articles of clothing in the video; (4) Defendant's place of employment was in close proximity to the Bank; and (5) the evidence of Defendant's recently-purchased car. In light of all this, it is evident that Defendant's shoes were a minor piece of evidence in the grand scheme of things presented to the jury.

For these reasons, a new trial is not warranted.

## CONCLUSION AND ORDER

Based on the foregoing, Defendant's Motion for Judgment of Acquittal and New Trial (D.E No. 73) is **DENIED**.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: April 21, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on

April 21, 2016, by electronic and/or ordinary mail.

                    <u>S/Jennifer McCoy           </u>
                    Case Manager